IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| JAMES M. HARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:08-cv-00251-FDW |
| | ) | |
| CIBA VISION CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL BRIEF OF THE UNITED STATES AS INTERVENOR
DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292**

This civil action was initiated by the plaintiff under the *qui tam* provisions of the patent false marking statute, 35 U.S.C. § 292, an Act of Congress that has been in steady use since its first enactment 167 years ago in 1842. In the last year, however, defendants in six such *qui tam* civil actions, including this one, have raised the newly conceived argument that the statute is unconstitutional. Here, CIBA Vision argues that the relator lacks Article III standing to bring a *qui tam* action under Section 292 and that the statute violates the "take Care" clause of Article II of the Constitution because the statute allegedly does not provide the government with sufficient control over the litigation. On March 27, 2009, in the first ruling by a court on these constitutional challenges, the United States District Court for the Eastern District of Virginia rejected those arguments and upheld the constitutionality of 35 U.S.C. § 292. *Pequignot v. Solo Cup Co.*, 2009 WL 874488 (E.D.Va., March 27, 2009).

At the hearing on CIBA Vision's motion to dismiss on March 26, 2009, the day before the ruling in *Pequignot*, this Court focused on defendant's Article II argument and requested briefing on the following hypothetical issue: "what control does the U.S. Government have over this case if

EXHIBIT B

the relator and the defendant agree up front to [a settlement] deal and file a Complaint, Answer, and Stipulated Dismissal with Prejudice?"  Transcript of March 26, 2009, Hearing, p. 39.[1]   By Order dated April 9, 2009, this Court also permitted the briefs already requested by the Court to address the recent decision in *Pequignot v. Solo Cup Co.* upholding the constitutionality of Section 292.

## I.        The Opinion in *Pequignot v. Solo Cup Co.* Provides Compelling Reasons to Uphold the Constitutionality of 35 U.S.C. § 292.

In *Pequignot*, the defendant argued that the relator lacks Article III standing to bring a *qui tam* action under Section 292 and also argued that the statute violates the "take Care" clause of Article II of the Constitution.  Defendant CIBA Vision makes the same arguments here.  The United States intervened in *Pequignot* (and also in this case) to defend the constitutionality of Section 292. The Court in *Pequignot* ruled that a *qui tam* relator possesses Article III standing under Section 292(b) and that the statute does not run afoul of the separation of powers doctrine or violate the "take Care" clause of Article II.  The analysis and holding by the district court in *Pequignot* is both enlightening and convincing, and the United States urges this Court similarly to reject the constitutional challenges that CIBA Vision raises here.

---

[1]  The Court also posed a second issue. "The second issue is: If the Court views a statute as facially unconstitutional, does it have to address that issue first or can it address 12(b)(6) issues [without addressing the constitutionality]?"  *Id.*, pp 73-74.  Of course, the United States contends that Section 292 is constitutional on its face, thus negating the premise of the issue articulated by the Court and rendering it moot.  Moreover, since the United States has intervened in this *qui tam* action pursuant to 28 U.S.C. § 2403 and Rule 5.1, F.R.Civ.P., only to defend the constitutionality of Section 292, the United States respectfully takes no position with respect to this second issue which is procedural in nature.

The United States understands the Court's second question does not address the issue of whether the plaintiff possesses judicial standing under Article III of the Constitution, but rather was focused on consideration of the Article II matters.  With respect to Article III standing, the Court must first determine that the plaintiff has standing before the Court has authority to proceed to other issues in the case.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).  Moreover, as we demonstrated in our previous briefs, the plaintiff here clearly does have Article III standing as a *qui tam* relator with a partial assignment of the government's claim under the reasoning of *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, (2000).

2

EXHIBIT B

As the United States demonstrated in its earlier briefs and as the Court in *Pequignot* found, Section 292 is, on its face, constitutional.  Section 292 is an example of a classic *qui tam* statute, having the elements that Blackstone identified for such statutes, *i.e.*, that any person may sue for violations of the statute and that the person and the government are each entitled to a portion of the penalties imposed for the violation.  U.S. Opening Brief, pp. 5-6.  That classic *qui tam* mechanism, together with the historical enactment of *qui tam* statutes by the First Congress and subsequent early Congresses demonstrates that the use of *qui tam* legislation was at the time of the Constitution's adoption considered to be well within the constitutional authority of Congress to enact and the President to sign.

Nothing in modern jurisprudence has altered that conclusion.  Indeed, the Supreme Court in 2000 found the history of *qui tam* statutes to be "well nigh conclusive" that *qui tam* relators did not run afoul of the Article III requirement for standing.  *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 777 (2000).

Following that analysis and decision by the Supreme Court, the Court of Appeals for the Fifth Circuit, in an eleven to two *en banc* decision, found "that it is logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to qui tam lawsuits initiated under the [False Claims Act] is similarly conclusive with respect to the Article II question."  *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749, 752 (5th Cir. 2001) (*en banc*).

Section 292, at issue here, which was enacted in 1842, is part of that venerable history.  The basic elements of the classic *qui tam* mechanism are present in Section 292.  All of which leads inescapably to the conclusion that Section 292 does not conflict with the "take Care" clause of Article II.  The district court in *Pequignot v. Solo Cup Co.* found those points compelling and

EXHIBIT B

rejected the defendant's constitutional challenge.   This Court should also reject these same challenges raised by CIBA Vision.

**II.     The Hypothetical Facts Posed by the Court Do Not Support Holding the Qui Tam Statute Unconstitutional.**

The defendant in *Pequignot* also argued that if, hypothetically, the government wanted to settle or dismiss a Section 292 *qui tam* action over the objection of the relator, the statute violates Section 3 of Article II of the Constitution providing that the President "shall take Care that the Laws be faithfully executed" because the statute does not provide specific mechanisms for the Executive Branch of the government to exercise sufficient control over the litigation.   Here, as it did in *Pequignot*, the United States emphasized that the government has not tried to take the litigation in a direction that differs from the relator's prosecution of the case.   The United States urged the court in *Pequignot*, as it does here, not to consider hypothetical facts not present in the litigation before the court.

In upholding the constitutionality of Section 292, the court in *Pequignot* correctly rejected defendant's attempt to raise hypothetical facts not present in the case as grounds for declaring Section 292 unconstitutional.

> Although [defendant] has raised concerns regarding separation -of-powers issues that might arise if the government desired to litigate a § 292(b) action in a different manner than the *qui tam* relator, the Court need not decide whether such a fact pattern would pose constitutional problems, because that is not the case here. . . .   It is unnecessary to decide whether, on different facts, Article II might be violated.   On the record before the Court, there is no constitutional violation.

*Pequignot*, 2009 WL 874488, at *13.   As the court in *Pequignot* noted, the Supreme Court has instructed courts not to consider hypothetical facts not in the record when ruling on constitutional matters.

> This Court, as is the case with all federal courts, has no jurisdiction to pronounce any statute, either of a state or of the United States, void because irreconcilable with the

4

EXHIBIT B

constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies.  In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. . . .  Very significant is the incontrovertible proposition that it would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.  The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined.

*United States v. Raines*, 362 U.S. 17, 21-22 (1960)(internal citations and quotation marks omitted).

Thus, the United States respectfully reiterates that this Court need not address the constitutional effect of hypothetical facts that are not present in this civil action.

There is nothing on the face of Section 292 that conflicts with the Constitution.  The separation of powers doctrine and the "take Care" clause do not prohibit *qui tam* statutes.  Neither does the Constitution prohibit any person from initiating suit under such a *qui tam* statute.  Although the Supreme Court has never directly ruled on the issue of whether *qui tam* statutes violate Article II of the Constitution, the fact that the Court has entertained numerous cases involving *qui tam* statutes without ever expressing any concern that such statutes might conflict with the Constitution is highly indicative that no such conflict exists.  *See, e.g., Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1805); *Marvin v. Trout*, 199 U.S. 212, 225 (1905) *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 541  (1943); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997); *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771-78 (2000); *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119 (2003); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007).

Indeed, the Supreme Court has also on numerous occasions indicated that the use of *qui tam* statutes is fully acceptable as a method which Congress may choose to employ to enforce its statutes.  *United States ex rel. Marcus v. Hess,* 317 U.S. at 542 ("Congress has power to choose this

EXHIBIT B

method to protect the government from burdens fraudulently imposed upon it; to nullify the criminal statute because of dislike of the independent informer sections would be to exercise a veto power which is not ours."); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441 (1957) ("Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice."); *Tigner v. Texas*, 310 U.S. 141, 148 (1940) ("How to effectuate policy - the adaptation of means to legitimately sought ends - is one of the most intractable of legislative problems.  Whether proscribed conduct is to be deterred by *qui tam* action or triple damages or injunction, or by criminal prosecution, or merely by defense to actions in contract, or by some, or all, of these remedies in combination, is a matter within the legislature's range of choice.").

Under such circumstances, the ordinary presumption in favor of the constitutionality of statutes enacted by Congress is immensely strengthened and leads to the conclusion that Section 292 clearly is constitutional on its face.

Section 292 is also constitutional as applied to the facts actually present in the record of this litigation.  It is significant to remember that the relevant facts in the record of this *qui tam* civil action are simply that the relator as "any person" has filed suit for penalties for false patent marking with the penalties to be split between the relator and the United States pursuant to the authority granted to any person under Section 292(b).  Also significant is what is not present here: *i.e.*, any indication that the United States has attempted to control the course of the litigation or the terms of settlement over the objection of the relator and has failed to do so, or any of other innumerable hypothetically possible factual situations. There are no facts adversely affecting the government's interests in this litigation.  Against this factual record, there is no basis to hold that Section 292 violates the "take Care" clause of Article II as applied to the facts in this case.

EXHIBIT B

Keeping in mind the clear teachings of the Supreme Court against using hypothetical factual situations not actually present in the record as grounds to invalidate a statute as unconstitutional, the United States, nevertheless, here offers some possible approaches that could be used to address the hypothetical situation posited by the Court.  In essence, the question involves what controls the government has where, before notice can be given to the government, a plaintiff and defendant settle and dismiss with prejudice a Section 292 *qui tam* action on terms the United States might find objectionable.

As the government noted in its initial brief and at the March 26, 2009, hearing, where the government has notice of the *qui tam* action, the government has adequate and necessary tools, including the right to appear in Section 292 patent *qui tam* litigation pursuant to 28 U.S.C. §§ 517-518.  U.S. Opening Brief, fn.11, pp. 23-24.   The United States also possesses the right to intervene if the relator cannot adequately represent the interests of the United States, Fed. R. Civ. P. 24(a)(2); and the right to veto a settlement by the *qui tam* plaintiff in cases in which the United States has intervened as a party by withholding its consent to a voluntary dismissal under Rule 41(a)(1)(A)(ii).  In addition, with the approval of the Court, the Government may intervene  pursuant to Rule 24(b) upon a showing that the Government's claim "shares with the main action a common question of law or fact."

Moreover, the United States is entitled to notice of all actions filed under Title 35, which, of course, includes all *qui tam* actions filed pursuant to 35 U.S.C. § 292.  Beyond that, the United States may also be subject to notice and joinder pursuant to Rule 19(a)(1)(B) as a person who "is so situated that disposing of the action in the person's absence may [] as a practical matter impair or impede the person's ability to protect the interest."  Since the United States has an interest in half of any settlement of a Section 292 *qui tam* action, any settlement that the United States found

EXHIBIT B

objectionable would be void if it interfered with the right provided to an absent party under Rule 19. Under Rule 19(a)(2), if the existing parties have not joined a person whose absence would impair its ability to protect its interests, then the Court has an obligation to add the person as a party so that the absentee's interests may be heard. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). Thus, even if the relator plaintiff and the defendant were to engage in a collusive attempt to settle a Section 292 *qui tam* action on terms the United States might find objectionable, the United States would be entitled to notice of the proposed action from the Court and possible joinder under Rule 19 to make its objections known to the Court and perhaps to block such an objectionable settlement by withholding its consent to dismissal pursuant to Rule 41(a)(1)(A)(ii).

Once the United States would learn of such an objectionable settlement, it could make known to the Court its objections by filing motions under the authority of 28 U.S.C. §§ 517 and 518 to assert its rights under Rules 19 and 24. To the extent that a Court might determine that it no longer would have jurisdiction over the action being settled, the United States could challenge the objectionable settlement by initiating its own separate civil action either as a direct challenge to the settlement or as a new civil action under Section 292 where the defendant would presumably attempt to raise the validity of the settlement as a defense based on *res judicata*.

The obvious point of this discussion of possible actions the government could or might take if the relator were hypothetically to conduct this *qui tam* action or settle it in a manner that the United State might find objectionable is to demonstrate to the Court that the United States possesses a variety of rights and powers under various statutes and the Federal Rules through which it can exercise control over Section 292 *qui tam* litigation sufficient enough to protect its interests, even in the hypothetical situation posited by the Court at the hearing on March 26, 2009.

8

EXHIBIT B

Of course, as a matter of law, such hypothetical facts (and the government's hypothetical legal steps in response) which are not at issue in this case, are not to form the basis for holding a statute unconstitutional.  *United States v. Raines*, 362 U.S. at 21-22.  Based on the facts which are present here — a *qui tam* relator has filed and served his complaint, and there is no conflict between the government and the relator over the conduct of the litigation —  there is no basis on which to hold 35 U.S.C. § 292 unconstitutional.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the government previous briefs, defendant's challenge to the constitutionality of 35 U.S.C. § 292 should be rejected.

Respectfully submitted,

TONY WEST
Assistant Attorney General
**s/ Joyce R. Branda**
**s/ Douglas N. Letter**
**s/ Michael D. Granston**
**s/ Gordon A. Jones**
Joyce R. Branda
D.C. Bar No. 246363
joyce.branda@usdoj.gov
Douglas N. Letter
D.C. Bar No. 253492
douglas.letter@usdoj.gov
Michael D. Granston
michael.granston@usdoj.gov
Gordon A. Jones
Kansas State Bar No. 7751
gordon.jones@usdoj.gov

U.S. Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-0473

EDWARD R. RYAN
Acting United States Attorney
**/s Paul B. Taylor**
Paul B. Taylor
Assistant United States Attorney
Chief, Civil Division
N.C. Bar No. 10067
Room 233, U. S. Courthouse
100 Otis Street
Asheville, North Carolina 28801-2611
828-259-0655
paul.taylor@usdoj.gov
Attorneys for United States of America

9

EXHIBIT B

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that the foregoing brief of the United States, minus the caption and certifications only, is comprised of 2992 words as shown by the WordPerfect count set forth below:



**/s Paul B. Taylor**
Paul B. Taylor
Assistant United States Attorney
Chief, Civil Division
N.C. Bar No. 10067
Room 233, U. S. Courthouse
100 Otis Street
Asheville, North Carolina 28801-2611
828-259-0655
paul.taylor@usdoj.gov

10

EXHIBIT B

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2009, I caused a copy of the foregoing document to be served by United States Mail, postage prepaid, or through the court's ECF email notification system on the following:

Glen Andrew Cipriani, Esq.
The Harrington Practice
10130 Mallard Creek Road, Suite 110
Charlotte, NC 28262
acipriani@hprac.com

Corey Salsburg, Esq.
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
csalsberg@mwe.com

Thomas P. Steindler, Esq.
McDermott Will & Emery LLP
6009 13th Street, N.W.
Washington, DC 20005-3096
tsteindler@mwe.com

Steven D. Moore, Esq.
Kilpatrick Stockton LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309
smoore@kilpatrickstockton.com

**/s Paul B. Taylor**
Paul B. Taylor
Assistant United States Attorney
Chief, Civil Division
N.C. Bar No. 10067
Room 233, U. S. Courthouse
100 Otis Street
Asheville, North Carolina 28801-2611
828-259-0655
paul.taylor@usdoj.gov

11

EXHIBIT B