IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| **JAMES M. HARRINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil No. 3:08-cv-00251-FDW |
| | ) | |
| **CIBA VISION CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTAL REPLY OF THE UNITED STATES AS INTERVENOR
DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292**

Defendant CIBA Vision's Post Hearing Brief misses several fundamental points that demonstrate the constitutionality of Section 292.

First and foremost, defendant misses the plain teaching of the Supreme Court in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 777 (2000) that the history of *qui tam* statutes from the time of the adoption of the Constitution is "well nigh conclusive" in establishing that *qui tam* relators have Article III standing. Moreover, defendant's argument that relators in Section 292(b) *qui tam* cases lack Article III standing, even though the Supreme Court held that relators in False Claims Act (FCA) *qui tam* cases have standing, is based on a misperceived difference between sovereign injuries (which defendant equates with public injuries and with punitive damages, fines and penalties) and proprietary injuries (which defendant equates with personal injuries and compensatory damages) that is absent from the analysis in *Vermont Agency* and does not otherwise comport with the law.

Second, with respect to whether Section 292 violates Article II of the Constitution, defendant ignores the holding of the *en banc* Court of Appeals for the Fifth Circuit where it found "that it is logically inescapable that the same history that was conclusive on the Article III question in *Stevens*

EXHIBIT C

with respect to qui tam lawsuits initiated under the [False Claims Act] is similarly conclusive with respect to the Article II question." *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749, 752 (5th Cir. 2001) (*en banc*). Taken together with the unassailable fact that the Constitution does not require some *affirmative* Executive Branch authorization for a relator to pursue a *qui tam* statutory cause of action in which the relator has been assigned a monetary stake in the outcome, that extensive and venerable history which the Court in *Vermont Agency* termed as "well nigh conclusive" is similarly conclusive that Section 292(b) is constitutional on its face. Consistent with the principles set out in *Vermont Agency* and *Riley*, the decision by Judge Brinkema correctly held that Section 292(b) is not unconstitutional. *Pequignot v. Solo Cup Co.*, 2009 WL 874488 (E.D.Va., March 27, 2009).

Third, long standing principles of constitutional jurisprudence teach that courts should not imagine possible hypothetical factual situations as a basis to declare a statute unconstitutional, but rather should decide questions of constitutionality based only on the facts actually present in the case before the court. *United States v. Raines*, 362 U.S. 17, 21-22 (1960). Here, the relator as "any person" has filed suit for penalties for false patent marking with the penalties to be split between the relator and the United States. Suit has been filed pursuant to the authority granted to any person under Section 292(b), and the United States has not attempted to control the course of the litigation or the terms of settlement over the objection of the relator, nor has it failed in such an attempt. Under these facts, there is no basis to hold that Section 292(b) violates the "take Care" clause of Article II as applied to the facts in this case.

Finally, even in the hypothetical situation posed by the Court, *i.e.,* a relator and defendant agree to a settlement that the United States would find objectionable, but they file a complaint and consent judgment dismissing the case with prejudice before the government is notified of the *qui tam* action or its settlement, the government, nevertheless, has sufficient tools and controls to set aside

such an objectionable settlement, or at least to have its objections heard by the court. These controls arise from the historical power of the sovereign in *qui tam* actions, 28 U.S.C. §§ 517 and 518, the Federal Rules of Civil Procedure, and the inherent power of the courts to do justice and prevent fraud.

### I.   *Qui Tam* Relators in Section 292(b) Cases Possess Article III Standing.

We view the analysis and holding in *Vermont Agency* that *qui tam* relators in False Claims Act cases have Article III standing as also disposing of any question about the Article III standing of *qui tam* relators in Section 292(b) cases. Defendant argues, however, that the while the *Vermont Agency* Court held that relators in FCA cases possess standing because they are partially assigned proprietary injuries in the form of compensatory damages, relators in Section 292(b) cases do not acquire standing because they are partially assigned only sovereign injuries in the form of fines and penalties. Defendant's argument is wrong for two major reasons.

First, defendant errs by reading *Vermont Agency* to limit standing to *qui tam* relators under statutes where only the government's proprietary injury for damages is partially assigned to the relator as in FCA *qui tam* cases. Defendant emphasizes the word "damages" in the sentence that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773. Defendant ignores, however, that the Supreme Court clearly recognized that a *qui tam* relator under the FCA asserts an undifferentiated overall injury consisting of both sovereign and proprietary injuries. "It is beyond doubt that the complaint asserts an injury to the United States —both the injury to its sovereignty arising from violation of

3

its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the alleged fraud." *Vermont Agency*, 529 U.S. at 771.[1]

Second, as we pointed out in our earlier briefs, defendant's reading would render unconstitutional many statutes where Congress has authorized private persons to sue to enforce public laws, redressing the sovereign injury to the United States arising from the violation of those laws, such as the civil rights causes of action under Title VII and antitrust actions which provide for triple damages.

## II. The Long History and Use of the *Qui Tam* Mechanism in England and the United States Confirms the Constitutionality of 35 U.S.C. § 292.

In our three prior briefs, we have consistently pointed to the historical use of *qui tam* statutes to carry out the enforcement of the government's laws. The Supreme Court in *Vermont Agency* relied on that very history in affirming that *qui tam* relators have Article III standing by virtue of a partial assignment of the government's claims.

---

[1] Defendant's restrictive reading of "damages" as the sole source of a relator's standing also makes no sense, which becomes particularly apparent if one considers how it might be applied to the facts present in *Vermont Agency*. The holding in *Vermont Agency* dealt with the standing of a *qui tam* relator to sue under the FCA. The FCA provides that whoever violates the Act is liable "for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains." 31 U.S.C. § 3729(a). The relator in *Vermont Agency* filed his complaint to obtain a single monetary judgment consisting civil penalties plus multiple damages arising from the defendant's fraud. Defendant's restrictive meaning of "damages" would mean that FCA relators would have standing to sue only for the proprietary injury and its compensatory damages but would lack standing to sue for the sovereign injury and the FCA's civil penalties and perhaps the multiplied damages. Not only is there absolutely no hint in the decision in *Vermont Agency* that the Supreme Court intended such a result in FCA cases, but defendant's reading would also create nightmarish procedural and substantive issues as courts would struggle to sort out such things as whether a judgment obtained in an FCA *qui tam* suit for solely the proprietary injury and compensatory damages would have preclusive effects for a separate suit by the government for sovereign injuries and (in defendant's view) their attendant civil penalties and multiple damages.

The consistent historical use of *qui tam* statutes informs the analysis because, as the Supreme Court has noted, the Court is heavily influenced by legislation passed by the early Congresses, and by a history of practice by the branches of the Federal Government: "[T]raditional ways of conducting government * * * give meaning to the constitution." *Mistretta v. United States*, 488 U.S. 361, 401 (1988). Moreover, the regular use of the *qui tam* provision of Section 292 for more than 160 years is part of that informative history.

The fact that the Supreme Court has entertained numerous cases involving *qui tam* statutes without ever expressing any concern that such statutes might conflict with the Constitution is highly indicative that no such conflict exists. *See, e.g., Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1805); *Marvin v. Trout*, 199 U.S. 212, 225 (1905) *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 541 (1943); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997); *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771-78 (2000); *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119 (2003); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007).

Beyond simply considering and deciding many cases litigated pursuant to various *qui tam* statutes, we have cited several instances where the Supreme Court has favorably commented that use of the *qui tam* mechanism is an appropriate policy option for the Congress to employ for the enforcement of its laws. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542; *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441 (1957); *Tigner v. Texas*, 310 U.S. 141, 148 (1940).

Coupled with this overwhelming record of long and venerable use of *qui tam* statutes and with the complete absence of even a hint in reported cases that such statutes might run afoul of the Constitution, the normal presumption of constitutionality accorded to Acts of Congress is

5

immeasurably enhanced here. Section 292(b) is constitutional on its face and as applied to the facts present here.

### III. The Hypothetical Facts Posed by the Court Do Not Support Holding the Qui Tam Statute Unconstitutional.

First, as we noted in our Supplemental Brief filed after the hearing, courts should be careful not to declare a statute unconstitutional based on hypothetical facts that are not before the court.

> Very significant is the incontrovertible proposition that it would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation. The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined.

*United States v. Raines*, 362 U.S. 17, 22 (1960).

The important fact is that the United States has an interest in all Section 292(b) *qui tam* cases, a sovereign interest that its laws not be violated and a proprietary interest that arises from its half share of the proceeds of the *qui tam* suit. Of course, in the present case, the United States is content that the relator adequately represents its interests, and that is why the United States has not sought to intervene pursuant to Rule 24. The government's intervention in this case is limited to defending the constitutionality of Section 292(b). On these facts, there is no basis to declare the statute unconstitutional.

Nevertheless, as the government has speculated with the Court at the March 26, 2009, hearing and in our Supplemental Brief, the government has sufficient tools to exercise control over Section 292(b) *qui tam* cases in the hypothetical situation if its interests were to diverge from those of the relator so that the relator would not adequately represent the interests of the United States. As a entity with a real interest in the case, the Federal Rules of Civil Procedure afford the United States with protections from having its views ignored by the courts. In the

6

event that the relator would not adequately represent the interests of the United States, Rule 19(a)(1)(B) would make the United States subject to notice and joinder as a person who "is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Under Rule 19(a)(2), if the existing parties have not joined a person whose absence would impair its ability to protect its interests, then the Court has an obligation to add the person as a party so that the absentee's interests may be heard. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). Hypothetically, if a relator were not adequately representing the interests of the United States, the government could also seek to intervene in the action pursuant to Rule 24.

Defendant's arguments do not strip the United States of its ability to make its views known to a court and to control its interests in a Section 292(b) *qui tam* litigation. Defendant says a non-party can be bound by a judgment involving its assignor/assignee party. We agree that where the relator adequately represents the interests of the United States, the United States is bound by the judgment in the relator's *qui tam* suit. But if the interests of the United States and the relator were to diverge so that the relator no longer adequately represented the interests of the United States, the government would be entitled to be made a party as Rules 19 and 24 provide.[2]

---

[2] Defendant points to a sentence in the Brief for the United States as *Amicus Curiae* in *United States ex rel. Eisenstein v. City of New York*, No.08-660 (Supreme Court) where the United States wrote that under the FCA as it existed before 1943 the government was powerless to interfere with a FCA *qui tam* prosecution. The issue in *Eisenstein* is whether a relator in a declined FCA *qui tam* action qualifies as the United States for purposes of having 60 days to appeal under Rule 4 of the Federal Rules of Appellate Procedure, and the relevant passage was part of a discussion of how the FCA developed over time and noting that there was nothing in the pre-1943 FCA giving the United States a statutory right to intervene. The *Eisenstein* brief did not discuss the potential right of the United States to intervene under the version of the FRCP that was in effect at that time, let alone the potential right of the United States to intervene in a Section 292(b) suit under the current FRCP. The passage in *Eisenstein* is essentially irrelevant to the question of what prerogatives the government can exercise under current law when a Section 292(b) suit is filed.

Moreover, the government is entitled to be heard in any case in which it has an interest pursuant to 28 U.S.C. §§ 517 and 518.

Defendants arguments about the unavailability of Rule 60 to the government are all based on the non-party status of the government. But if the hypothetical judgment had been entered through the collusive efforts of the relator and the defendant in an attempt to bind the United States to an outcome from which the United States was excluded, the government suggests that any court would set aside such a fraudulent judgment. Indeed, Rule 60(d) specifically provides in listing "Other Powers to Grant Relief," that "[t]his rule does not limit a court's power to: . . . (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; . . . or (3) set aside a judgment for fraud on the court." In hypothetical circumstances where the United States would have been excluded from proceedings that resulted in a collusive judgment affecting its rights and to which it objected, the United States would be entitled to challenge such a judgment.

The historical practice in *qui tam* litigation also prevented the collusive disposition between a relator and a defendant envisioned in the Court's hypothetical setting. After writing about the binding nature of a judgment obtained in *qui tam* litigation, Blackstone commented that the law would not give preclusive effect to such a judgment obtained through collusion betweeen a relator and defendant.

> This [preclusive effect of a judgment] has frequently occasioned offenders to procure their own friends to begin suit, in order to forestall and prevent other actions: which practice is in some measure prevented by a statute made in the reign of a very sharp-sighted prince in penal laws; 4 Hen. VII. C. 20.[,] which enacts, that no recovery, otherwise than by verdict, obtained by collusion in an action popular, shall be a bar to any other action prosecuted *bona fide*.

William Blackstone, *3 Commentaries on the Laws of England*, 160 (Clarendon Press 1768).[3] Although we have been unable to find a similar statute in the United States, we suggest that the historic statutory English law informs the content of the common law applied to prevent a collusively obtained judgment from being a bar to a subsequent action by the United States.

Thus, the United States has a full range of tools it could employ to assert and protect its interests in the event the interests of the United States diverged from those of the relator. In addition to the tools provided the United States by the Federal Rules and by 28 U.S.C. §§ 517 and 518, the United States could challenge or overcome a settlement between a relator and defendant to which the United States objected by initiating a variety of litigation. It could initiate "an independent action to relieve" it from the judgment under Rule 60(d)(1). The government could seek to set aside the judgment as a fraud on the court under Rule 60(d)(3). The government could initiate its own civil complaint for penalties under Section 292 and argue that the collusive settlement hypothesized by the Court would have no preclusive effect on the claims of the United States. Finally, as sovereign, the United States could also bring criminal charges against the defendant for the criminal violation of its laws under Section 292(a). Even a final civil settlement would not act to bar a criminal prosecution.

As we stated in our earlier briefs, such hypothetical facts (and the government's hypothetical legal steps in response) which are not at issue in this case, are not to form the basis for holding a statute unconstitutional. *United States v. Raines*, 362 U.S. at 21-22. Based on the facts which are present here — a *qui tam* relator has filed and served his complaint, and there is

---

[3] *See also* J. Randy Beck, *The False Claims Act and the English Eradication of Qui Tam Legislation,* 78 N.C. L.Rev. 539, 585-89 (2000) for a discussion of 16th and 17th century English legislation designed to curb the fraudulent use of *qui tam* suits.

9

no conflict between the government and the relator over the conduct of the litigation — there is no basis on which to hold 35 U.S.C. § 292(b) unconstitutional.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the government previous briefs, defendant's challenge to the constitutionality of 35 U.S.C. § 292(b) should be rejected.

Respectfully submitted, this 15th day of May, 2009.

| | |
|---|---|
| TONY WEST | EDWARD R. RYAN |
| Assistant Attorney General | Acting United States Attorney |
| **s/ Joyce R. Branda** | **/s Paul B. Taylor** |
| **s/ Douglas N. Letter** | Paul B. Taylor |
| **s/ Michael D. Granston** | Assistant United States Attorney |
| **s/ Gordon A. Jones** | Chief, Civil Division |
| Joyce R. Branda | N.C. Bar No. 10067 |
| D.C. Bar No. 246363 | Room 233, U. S. Courthouse |
| joyce.branda@usdoj.gov | 100 Otis Street |
| Douglas N. Letter | Asheville, North Carolina 28801-2611 |
| D.C. Bar No. 253492 | 828-259-0655 |
| douglas.letter@usdoj.gov | paul.taylor@usdoj.gov |
| Michael D. Granston | Attorneys for United States of America |
| michael.granston@usdoj.gov | |
| Gordon A. Jones | |
| Kansas State Bar No. 7751 | |
| gordon.jones@usdoj.gov | |

U.S. Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-0473

## WORD COUNT CERTIFICATION

      I hereby certify that the foregoing brief of the United States, minus the caption and certifications only, is comprised of 3189 words as shown by the WordPerfect count set forth below:



                                    **/s Paul B. Taylor**
                                    Paul B. Taylor
                                    Assistant United States Attorney
                                    Chief, Civil Division
                                    N.C. Bar No. 10067
                                    Room 233, U. S. Courthouse
                                    100 Otis Street
                                    Asheville, North Carolina 28801-2611
                                    828-259-0655
                                    paul.taylor@usdoj.gov

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 15th day of May, 2009, I caused a copy of the foregoing document to be served by United States Mail, postage prepaid, or through the court's ECF email notification system on the following:

| | |
|---|---|
| Glen Andrew Cipriani, Esq.<br>The Harrington Practice<br>10130 Mallard Creek Road, Suite 110<br>Charlotte, NC 28262<br>acipriani@hprac.com | Corey Salsburg, Esq.<br>McDermott Will & Emery LLP<br>28 State Street<br>Boston, MA 02109<br>csalsberg@mwe.com |
| Thomas P. Steindler, Esq.<br>McDermott Will & Emery LLP<br>6009 13th Street, N.W.<br>Washington, DC 20005-3096<br>tsteindler@mwe.com | Steven D. Moore, Esq.<br>Kilpatrick Stockton LLP<br>1100 Peachtree Street<br>Suite 2800<br>Atlanta, GA 30309<br>smoore@kilpatrickstockton.com |

          **/s Paul B. Taylor**
          Paul B. Taylor
          Assistant United States Attorney
          Chief, Civil Division
          N.C. Bar No. 10067
          Room 233, U. S. Courthouse
          100 Otis Street
          Asheville, North Carolina 28801-2611
          828-259-0655
          paul.taylor@usdoj.gov